UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                   :

CAROLYN CHIN,                    :
                                     :

                Plaintiff,         :     Civil Action No. 12-Civ-4010 (HB)
                                     :

      -against-                 :

                                     :     **ORAL ARGUMENT REQUESTED**

CH2M HILL COMPANIES, LTD., CH2M    :
HILL, INC. and LEE McINTIRE,        :
                                     :

             Defendants.       :
--------------------------------------------------------x

## DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

Eugene Scalia (*Admitted Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.   20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

Gabrielle Levin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY   10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Defendants*

July 20, 2012

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................................2

SUMMARY OF ARGUMENT ................................................................3

ARGUMENT ................................................................................4

I.   THIS COURT HAS DIVERSITY JURISDICTION BECAUSE THERE IS NO REASONABLE POSSIBILITY THAT THE COMPLAINT STATES A CAUSE OF ACTION AGAINST CH2M HILL, INC. ................................4

    A.   Under The Fraudulent Joinder Standard, The Reasonable Possibility Of A Claim Is Based On The Complaint's Allegations, Not On Plaintiff's (Fanciful) Assertions In A Remand Motion ................................4

    B.   Plaintiff Has No Possible Claim Against CH2M HILL, Inc. Because No Action By That Company Is Alleged In The Complaint; Indeed, Only Its Parent Company Could Have Taken The Action Plaintiff Complains Of ..............6

    C.   Even If Plaintiff Had Alleged Action By CH2M HILL, Inc., She Would Have No Reasonable Possibility Of Stating A Claim Against That Company, For Multiple Reasons ................................11

        1.   New York City's Human Rights Law Does Not Reach CH2M HILL, Inc. Because That Company And Plaintiff Are Residents Of Florida, Not New York City, And Plaintiff Was Not Its Employee, Not On Its Board, And Was Not Retained To Provide It Services In New York City; Indeed, The "Internal Affairs Doctrine" Would Prevent New York City From Regulating The Relationship Between A Delaware Corporation And Its Directors ................................11

        2.   Outside Corporate Directors Are Not Covered By The New York City Human Rights Law ................................17

II.  PLAINTIFF'S OTHER LATE-FOUND THEORIES AND FACTUAL ALLEGATIONS ALSO FAIL TO ESTABLISH A CAUSE OF ACTION AGAINST CH2M HILL, INC. ................................21

CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Artis v. Random House, Inc.,*
  936 N.Y.S.2d 479 (N.Y. Sup. Ct. 2011) ............................................................. 22

*Ascension Health v. Am. Int'l Grp., Inc.,*
  2009 WL 2195916 (S.D.N.Y. July 23, 2009) ...................................................... 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................ 7

*Atuahene v. City of Hartford,*
  10 F. App'x 33 (2d Cir. 2001) ............................................................................ 7

*Brice v. Sec. Operations Sys., Inc.,*
  2001 WL 185136 (S.D.N.Y. Feb. 26, 2001) ...................................................... 22

*Burlington N. & Santa Fe Ry. Co. v. White,*
  548 U.S. 53 (2006) .............................................................................................. 21

*Chavero v. Local 241,*
  787 F.2d 1154 (7th Cir. 1986) ............................................................................ 17

*City of Lafayette v. La. Power & Light Co.,*
  435 U.S. 389 (1978) ............................................................................................ 16

*Cook v. Arrowsmith Shelburne, Inc.,*
  69 F.3d 1235 (2d Cir. 1995) ............................................................................... 24

*Cosgriff v. Valdese Weavers LLC,*
  2012 WL 1071497 (S.D.N.Y. Mar. 30, 2012) ................................................... 19

*Duffy v. Drake Beam Morin,*
  1998 WL 252063 (S.D.N.Y. May 19, 1998) ...................................................... 14

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982) ............................................................................................ 15

*Farmer v. Lowe's Co.,*
  188 F. Supp. 2d 612 (W.D.N.C. 2001) ............................................................... 17

*Fichman v. Media Ctr.,*
  512 F.3d 1157 (9th Cir. 2008) ............................................................................ 17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Fincher v. Depository Trust & Clearing Corp.*,
604 F.3d 712 (2d Cir. 2010)................................................................................... 21

*Fried v. LVI Servs., Inc.*,
2011 WL 2119748 (S.D.N.Y. May 23, 2011) .......................................... 10, 22, 23

*Fried v. LVI Servs., Inc.*,
2011 WL 4633985 (S.D.N.Y. Oct. 4, 2011) .................................................. 12, 13

*Griggs v. State Farm Lloyds*,
181 F.3d 694 (5th Cir. 1999) ........................................................................... 5

*Herman v. Blockbuster Entm't Grp.*,
18 F. Supp. 2d 304 (S.D.N.Y. 1998), *aff'd* 182 F.3d 899 (2d Cir. 1999) .......................... 24, 25

*Hoffman v. Parade Publications*,
15 N.Y.3d 285 (2010) ........................................................................ 11, 12, 13, 14

*In re BP P.L.C. Deriv. Litig.*,
507 F. Supp. 2d 302 (S.D.N.Y. 2007)........................................................... 15, 16

*In re Rezulin Prods. Liab. Litig.*,
133 F. Supp. 2d 272 (S.D.N.Y. 2001).............................................................. 5, 6, 9

*Jowers v. DME Interactive Holdings, Inc.*,
2003 WL 230739 (S.D.N.Y. Feb. 3, 2003)........................................................... 20

*Kern v. City of Rochester*,
93 F.3d 38 (2d Cir. 1996) ................................................................................. 17

*Kilkenny v. Greenberg Traurig, LLP*,
2006 WL 1096830 (S.D.N.Y. Apr. 21, 2006)........................................................ 19

*Kruso v. Int'l Tel. & Tel. Corp.*,
872 F.2d 1416 (9th Cir. 1989) ........................................................................... 6

*Lavergne v. Burden*,
244 A.D.2d 203, 665 N.Y.S.2d 272 (N.Y. App. Div. 1st Dep't 1997)................................... 18

*Lightfoot v. Union Carbide Corp.*,
1994 WL 184670 (S.D.N.Y. May 12, 1994) ........................................................ 13

*Matsumura v. Benihana Nat'l Corp.*,
2007 WL 1489758 (S.D.N.Y. May 21, 2007) ........................................................ 5

# TABLE OF AUTHORITIES
(continued)

Page(s)

*McGhee v. City of N.Y.*,
2002 WL 1969260 (N.Y. Sup. Ct. Aug. 5, 2002) ................................................. 17, 18

*Murray v. Miner*,
876 F. Supp. 512 (S.D.N.Y. 1995), *aff'd* 74 F.3d 402 (2d Cir. 1996) ..................... 24

*O'Neill v. Atl. Sec. Guards*,
250 A.D.2d 493, 671 N.Y.S.2d 976 (N.Y. App. Div. 1st Dep't 1998) ..................... 18

*Padmore, Inc. v. LC Play Inc.*,
679 F. Supp. 2d 454 (S.D.N.Y. 2010) ..................................................................... 13

*Palmer v. Arden-Mayfair, Inc.*,
1978 WL 2506 (Del. Ct. Ch. July 6, 1978) ............................................................. 15

*Pampillonia v. RJR Nabisco, Inc.*,
138 F.3d 459 (2d Cir. 1998) ......................................................................... 3, 5, 7, 8

*Poulos v. Naas Foods, Inc.*,
959 F.2d 69 (7th Cir. 1992) ..................................................................................... 5

*Prescott v. Plant Indus., Inc.*,
88 F.R.D. 257 (S.D.N.Y. 1980) ......................................................................... 15, 16

*Pullman Co. v. Jenkins*,
305 U.S. 534 (1939) .................................................................................................. 5

*Reil v. Clinton Cnty.*,
75 F. Supp. 2d 37 (N.D.N.Y. 1999) ....................................................................... 17

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*,
2007 WL 2044656 (S.D.N.Y. July 17, 2007) ......................................................... 16

*Robles v. Cox and Co., Inc.*,
841 F. Supp. 2d 615 (E.D.N.Y. 2012) ............................................................... 12, 13

*Rohlsen v. Latin Am. Airways*,
65 N.Y.S.2d 644 (N.Y. Sup. Ct. 1946) ................................................................... 15

*Rossbach v. Lorillard, Inc.*,
71 F. Supp. 2d 221 (S.D.N.Y. 1999) ......................................................................... 8

*Sokol v. Ventures Educ. Sys. Corp.*,
809 N.Y.S.2d 484 (N.Y. Sup. Ct. 2005) ................................................................. 15

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Truglia v. KFC Corp.*,
   692 F. Supp. 271 (S.D.N.Y. 1988), *aff'd* 875 F.2d 308 (2d Cir. 1989) .................................... 5

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ............................................................................................................ 10

*Wahlstrom v. Metro-North Commuter R.R. Co.*,
   89 F. Supp. 2d 506 (S.D.N.Y. 2000) .............................................................................. 14

*Welch v. United Parcel Serv. Inc.*,
   2012 WL 2552185 (E.D.N.Y. June 30, 2012) ............................................................... 14

*Williams v. City of N.Y.*,
   2012 WL 2524726 (S.D.N.Y. June 26, 2012) ............................................................... 21

*Williams v. New York City Hous. Auth.*,
   61 A.D.3d 62, 872 N.Y.S.2d 27 (N.Y. App. Div. 1st Dep't 2009) ................................. 20

## Statutes and Other Authorities

28 U.S.C. § 1332(a) ................................................................................................................ 4

28 U.S.C. § 1441 .................................................................................................................... 4

Del. Code Ann. tit. 8, § 141(a) (West 2010) ......................................................................... 17

Fed. R. Civ. P. 21 ................................................................................................................... 2

N.Y. Bus. Corp. L. § 701 ....................................................................................................... 17

N.Y.C. ADMIN. CODE § 8-102(5) ........................................................................................ 18, 19

N.Y.C. ADMIN. CODE § 8-107(1) .......................................................................................... 18

N.Y.C. ADMIN. CODE § 8-107(7) .......................................................................................... 20

N.Y.C. Local Law No. 85, § 1 (2005) ................................................................................... 17, 18

Restatement (Second) of Conflict of Laws, § 302 cmt. a (1971) .......................................... 15

## <u>INTRODUCTION</u>

Plaintiff has filed a suit that is flawed in many and fundamental ways.  For example, she alleges employment discrimination even though she was a corporate director, not an employee. And she sues under a New York City ordinance, yet the company is in Colorado and she lives in Florida and had no role for the company in New York.

Plaintiff's Motion to Remand concerns another flaw in her indiscriminate pleading:  She has sued a subsidiary company against which she has no conceivable cause of action.  Plaintiff was on the board of CH2M HILL Companies, Ltd., which for simplicity this brief will call "LTD."  Plaintiff also has sued LTD.'s subsidiary, CH2M HILL, Inc.  (For simplicity, "INC.") But a subsidiary is not liable for the supposed misconduct of its parent.  And a subsidiary does not nominate the directors of a separate company—the company's board of directors does.

Plaintiff would prefer to glom LTD. and INC. together, treat them as a single company, and blunder forward with her case.  But fundamentals of corporate law do not allow that, as the Second Circuit has recognized in a leading decision on fraudulent joinder.  Plaintiff makes no allegation against INC. specifically, and the discriminatory action she does allege (not being re-nominated to LTD.'s board of directors) could only have been taken by LTD.  There is no possible claim against INC., and accordingly there is complete diversity and this case properly was removed to federal court.

Plaintiff has no possible claim against INC. for other reasons as well.  Her service as a board director was not based in New York, yet she attempts to use New York City law to reverse a decision regarding the board of a company that is incorporated in Delaware and headquartered in Colorado.  The New York Court of Appeals has made clear that the New York City law does not reach that far; indeed, the "internal affairs doctrine" would not permit it to regulate Plaintiff's relationship with an out-of-state company in such circumstances.  This Court should, however,

note the irony in Plaintiff arguing that this case belongs in New York state court, under New York City law, because she is a Floridian who supposedly was wronged by a fellow Floridian and two Coloradans while on a Colorado corporate board.

Finally, New York City law would not countenance the type of claim Plaintiff attempts to bring in any event, and Plaintiff cannot repair the fast and loose pleading in her Complaint by presenting new fast and loose allegations in her Motion.  For example, her new claim that LTD.'s CEO acted as an agent for INC. when he told her she would not be re-nominated to LTD.'s board is not alleged in the Complaint, and is absurd.

Plaintiff's Motion to Remand should be denied.  There is no New York nexus here—other than Plaintiff's lawyer.  That is why this case ultimately belongs in Colorado federal court, to which Defendants have separately asked that it be transferred.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff served as an independent director on LTD.'s board of directors from 2003 until 2009, when her second term ended and she was not nominated for a third term.  Compl. ¶¶ 2, 59; Madia Decl. ¶ 9 (Paparella Aff. Ex. S).  On February 14, 2012, Plaintiff filed a Complaint in the New York State court naming three defendants:  LTD., a Delaware corporation based in Colorado; INC., a wholly owned subsidiary of LTD. that is a Florida corporation based in Colorado; and Lee McIntire, the Chief Executive Officer of LTD., who lives and works in Colorado.  Notice of Removal [Dkt. No. 1], ¶¶ 9-12.  (Plaintiff's Motion does not dispute the citizenship averments in Defendants' Notice of Removal.)  Plaintiff alleges that she was not re-nominated to the LTD. board of directors because she is "a disabled Asian female," and because

---

[1]  For the reasons reflected in this Opposition, Defendants also request that the Court dismiss CH2M HILL, Inc. from this action pursuant to Rule 21 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

she purportedly objected to discriminatory treatment of an employee.  Compl. ¶¶ 1, 42, 69.  Although both CH2M HILL entities are based in Colorado and Plaintiff's service on LTD.'s board had no nexus to New York, Plaintiff—a Florida resident—sues under the New York City Human Rights Law.

Defendants removed the case to this Court on grounds of diversity on May 21, 2012.  Their Notice of Removal explained that although INC. and Plaintiff are citizens of the same state—Florida—complete diversity is present because INC. is fraudulently joined and therefore should not be considered for purposes of determining jurisdiction.  Notice of Removal [Dkt. No. 1], ¶¶ 15-21.  Plaintiff served on the board of LTD., not INC., Madia Decl. ¶ 10 (Paparella Aff. Ex. S), and there is only one particularized reference to INC. in the entire Complaint.  *See* Compl. ¶ 3.  A leading Second Circuit decision found in very similar circumstances that joinder was fraudulent, as discussed below.

Plaintiff moved to remand on June 27.  She uses her Motion to expand on the allegations in her Complaint extensively (and improperly, as discussed below).  Among other things, Plaintiff now claims that she complained about gender discrimination allegedly committed by INC., that her complaints were directed to defendant McIntire in his supposed capacity as agent for INC., and that INC. was "directly involved" in the decision to end Plaintiff's tenure on the board of directors of LTD.  Motion at 3-5, 11, 18-25.

## SUMMARY OF ARGUMENT

"INC." and "LTD." are separate corporations, and LTD.'s decision not to re-nominate Plaintiff to its board gives her no possible claim against INC.  The Complaint alleges no such claim; instead, it treats two separate corporations as an undifferentiated whole, an approach the Second Circuit squarely rejected in a leading case on fraudulent joinder.  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998).

Plaintiff's various attempts to repair her Complaint through her Motion must also be rejected. Whether a defendant is fraudulently joined must be based on the allegations in the Complaint, not on supplemental allegations in Plaintiff's remand motion. Moreover, Plaintiff's new allegations are insufficient in any event.

Finally, Plaintiff's claim against INC. is not only factually unsupported, but legally insupportable as well. A corporate director cannot sue *any* corporation for discrimination under the New York City Human Rights Law ("NYCHRL"). She certainly cannot use the NYCHRL to sue a corporation separate from the one on which she served, especially when neither of the corporations, nor Plaintiff, nor her position, is based in New York City. Indeed, the "internal affairs doctrine" forbids that.

For these and the reasons set forth below, Plaintiff's Motion to Remand should be denied.

## ARGUMENT

I. **THIS COURT HAS DIVERSITY JURISDICTION BECAUSE THERE IS NO REASONABLE POSSIBILITY THAT THE COMPLAINT STATES A CAUSE OF ACTION AGAINST CH2M HILL, INC.**

Where, as here, all properly joined parties are completely diverse, and the amount in controversy requirement is met, this Court has jurisdiction following removal from state to federal court. 28 U.S.C. § 1332(a); 28 U.S.C. § 1441. For the reasons set forth in Defendants' Notice of Removal and further detailed below, non-diverse defendant INC. has been fraudulently joined and its citizenship therefore is irrelevant for the purposes of determining diversity.[2]

A. **Under The Fraudulent Joinder Standard, The Reasonable Possibility Of A Claim Is Based On The Complaint's Allegations, Not On Plaintiff's (Fanciful) Assertions In A Remand Motion**

"[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's

---

[2] Plaintiff does not dispute that the amount in controversy requirement is satisfied. *See* Notice of Removal [Dkt. No. 1], ¶¶ 22-25.

right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia*, 138 F.3d at 460-61.  In order to show that a non-diverse defendant is "fraudulently joined," the defendant must demonstrate *either* "that there has been outright fraud committed in the plaintiff's pleadings, *or* that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* at 461 (emphasis added).  While the defendant's demonstration must be "clear and convincing," *id.*, that burden "is not impossible of satisfaction," *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 280 (S.D.N.Y. 2001), and the "possibility" of recovery identified by plaintiff must be a "reasonable" one.  *Id.* at n.4; *Matsumura v. Benihana Nat'l Corp.*, 2007 WL 1489758, at *3 (S.D.N.Y. May 21, 2007).

Because fraudulent joinder is a jurisdictional inquiry, the Court is permitted to look beyond the pleadings, but it considers only the actions alleged *in the complaint* in assessing whether a claim is possible.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (holding that the right to remove is "to be determined according to the plaintiff's pleading at the time of the petition for removal"); *Truglia v. KFC Corp.*, 692 F. Supp. 271, 274-75 (S.D.N.Y. 1988) (denying motion to remand where plaintiff had not alleged any facts in the complaint that would permit a corporate affiliate to be held liable), *aff'd* 875 F.2d 308 (2d Cir. 1989).  "Post-removal filings may not be considered . . . to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999).  In other words, a defendant "need not negate any possible theory that [plaintiff] might allege in the future:  only his present allegations count."  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992).  As observed by another judge of this Court, federal judges "across the nation" have denied remand "based on inadequate pleadings," and have

"disregard[ed] allegations not contained in the original complaint." *Rezulin*, 133 F. Supp. 2d at

284.[3]

> ### B.   Plaintiff Has No Possible Claim Against CH2M HILL, Inc. Because No Action By That Company Is Alleged In The Complaint; Indeed, Only Its Parent Company Could Have Taken The Action Plaintiff Complains Of

As an initial matter, the Complaint fails to state a possible claim against INC. for the

simple reason that it contains no specific factual allegations against INC.  Defendants noted this

deficiency in their Notice of Removal (*see* ¶ 18), yet Plaintiff's Motion offers no rebuttal.

The Complaint's only reference to INC. is in Paragraph 3:  "The Headquarters of CH2M

Hill Companies, Ltd. and CH2M HILL INC [sic] (collectively referred to as 'CH2') is in Denver,

Colorado."  Compl. ¶ 3.  Thereafter, the Complaint refers to the two companies as one, even

when alleging acts central to her claim that could only have been taken by LTD.  *See, e.g.*,

Compl. ¶ 8 ("In 2003, CH2 hired Spencer Stuart, Inc. to conduct a search for a candidate for its

Board of Directors," resulting in plaintiff's selection), and ¶ 84 ("Defendants eliminated Chin's

seat on the Board").  Plaintiff's Motion is therefore quite misleading when it says, for example,

that Plaintiff "continued to complain to Defendants CH2M Hill, Inc. and CH2M Hill Companies,

Ltd."  Motion at 9 (citing Compl. ¶ 74).  The Complaint says only that Plaintiff "continued to

complain to CH2," *id.*, ¶ 75, and it is not possible to read every reference to "CH2" as a

reference to both corporations.

It is well-settled that a complaint fails to establish a cause of action against a company

---

[3] Plaintiff seeks to reserve her right to amend the Complaint (Motion at 15 n.1), although she has not sought leave to do so.  Courts have long rejected plaintiffs' attempts to obtain remand to state court through amendment of their complaint.  *See, e.g.*, *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989) (affirming district court's denial of motion to remand and refusal to consider allegations contained in proposed amended complaint). Moreover, any attempted amendment by Plaintiff would of course be governed by the requirement of Rule 11 that Plaintiff have reasonable, factual bases for her allegations.

when it merely collectively alleges violations by that company and an affiliate.  *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct," plaintiff's complaint failed to satisfy the "minimum" standard of Fed. R. Civ. P. 8); *Ascension Health v. Am. Int'l Grp., Inc.*, 2009 WL 2195916, at *2 (S.D.N.Y. July 23, 2009) (dismissing claim against parent because complaint simply lumped parent with subsidiary and complaint was "devoid of factual allegations demonstrating the direct liability" of parent).[4]

This rule applies in the context of fraudulent joinder, and indeed *Pampillonia*—a leading Second Circuit decision cited in Plaintiff's Motion at 11-12—is directly on point.  Plaintiff there filed a state court complaint alleging retaliatory discharge in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296.  138 F.3d at 460.  Plaintiff named as defendants both the legal entity for which he worked, and its corporate parent.  *Id.*  The district court denied plaintiff's motion to remand and the Second Circuit affirmed, explaining that plaintiff's complaint failed "to allege sufficient factual foundations to support" his claim that the parent company was his "employer," or that it could be liable for the subsidiary's actions.  *Id.* at 461-62.  The "only mention" of the parent corporation in the complaint was "the allegation that [the parent corporation] was incorporated in Delaware and has an office in New York."  *Id.* at 461.  (Plaintiff's Complaint here is *identical*—except that her only statement is that INC. is headquartered "in Denver, Colorado," not New York.  Compl. ¶ 3.)  The Second Circuit in *Pampillonia* also noted that the complaint failed to allege facts that could establish a basis for holding the parent company liable for the subsidiary's actions, and that defendants had submitted

---

[4] *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

an affidavit averring that the parent corporation "took no part in hiring, discharging or making any other personnel decisions" regarding the subsidiary, and that the parent and subsidiary "had separate corporate officers, books and accounts."  *Id.* at 462.  *See also Rossbach v. Lorillard, Inc.*, 71 F. Supp. 2d 221, 223 (S.D.N.Y. 1999) (denying motion to remand and finding that corporate affiliate was fraudulently joined where the complaint's only allegation related to the affiliate's citizenship).

Here, Plaintiff had no employment relationship with INC. (or LTD.) and the Complaint alleges no facts that could establish a basis for holding the subsidiary company liable for the decision of LTD. not to nominate Plaintiff to a third term on its board.  It hardly can be inferred from Plaintiff's Complaint that INC. possessed power over the board nominations of its parent; indeed, it would be preposterous—and counter-factual—to so infer.  INC. is but one of ten direct subsidiaries of LTD.; other subsidiary companies also have substantial numbers of employees and operations.  Supp. Madia Decl. ¶ 9.  (For example, INC. has 5,059 employees; three other subsidiaries each have more than 2,000 workers.  *Id.*)  Only the board of directors of LTD. has the power to nominate LTD.'s directors.  *See* Restated Bylaws of CH2M HILL Companies, Ltd., art. 3, § 3 ("Non-employee director candidates (also known as outside directors) shall be nominated by the Board of Directors.") (Rimas Decl. Ex. A); *see also* CH2M HILL Companies, Ltd., Schedule 14A Definitive Proxy Statement dated March 30, 2009, at 3 ("[T]he outside Directors are nominated by the entire Board") (Rimas Decl. Ex. B).  *And see* Restated Bylaws art. 3, § 8 ("An affirmative vote of not less than a majority of the entire Board of Directors is required for the Board to act on behalf of the Corporation.") (Rimas Decl. Ex. A).[5]

---

[5]  Of the 13 members of LTD.'s board of directors in early 2009, only 2 were directors of INC.  *See* Rimas Decl. ¶ 7.  Plaintiff alleges that one officer of INC. was a director of LTD. (Chin Decl. ¶ 11), but this individual was not a director of LTD. in early 2009.  Rimas Decl. ¶ 7.

Simply, Plaintiff's Complaint states no possible claim against INC. because it alleges no action by INC., and because Plaintiff did not—and cannot—allege that INC. made the decision she sues over.

For two separate reasons, this gaping hole in any claim against INC. is not mended by the repeated claims in Plaintiff's Motion (*see* Motion at 16, 18) that the other defendants—LTD. and McIntire—acted as "agents" for INC. when they took steps with regard to her board position. *First*, that argument fails because it is an allegation not made in the Complaint; courts "across the nation" deny remand "based on inadequate pleadings" and "disregard allegations not contained in the original complaint." *Rezulin*, 133 F. Supp. 2d at 284. *See supra* at 5-6.[6]

*Second*, there is no basis to suppose or infer that LTD. and McIntire acted as agents for INC. when determining LTD.'s board; rather, it defies basic principles of corporate governance to suppose that a company and its directors act as agents *for another company* when identifying

---

[6] A number of Plaintiff's new allegations are demonstrably erroneous.  For instance, she has submitted an exhibit she characterizes as "a Form 1099-MISC document," which purportedly identifies INC. rather than LTD. "as the Payer" for her service on LTD.'s board.  Motion at 11 (citing Paparella Aff. Ex. B).  All of the Form 1099s in Defendants' possession show LTD. as the payer for Plaintiff's board service.  *See* Evans Decl. Ex. 1.  The document Plaintiff submitted, which is an entirely different form than the Form 1099s in Defendants' possession, is not authenticated *and bears the taxpayer identification number for LTD., not INC.  See* Evans Decl. ¶ 6.  The document accordingly is unreliable on its face, does not match the document provided to Plaintiff by LTD., and should be struck.

Similarly, Plaintiff alleges in her Motion that she complained of discrimination to individuals who acted as agents of INC., including Lee McIntire—who she alleges was CEO of INC.— and Robert C. Allen, identified as a "Senior Vice President and Chief Human Resources Officer" with INC. who "reported to" McIntire.  Motion at 5, 9-10.  In fact, Allen, who is now retired, was an employee of LTD., was not an officer, employee, or director of INC. from 2001 to 2009 when he was employed by LTD., and was only employed by INC. from March 1994 to February 1996.  Supp. Madia Decl. ¶ 5.

Needless to say, such erroneous factual assertions, which are first presented in Plaintiff's Motion and do not appear in her Complaint, should not be treated as accurate for purposes of her remand motion.

directors.  Even supposing that McIntire was the CEO of INC.—he was not[7]—that gives no basis

to believe he acted for INC. when determining nominees to LTD.'s board.  *See United States v.*

*Bestfoods*, 524 U.S. 51, 69 (1998) (discussing the "well established principle of corporate law

that directors and officers holding positions with a parent and its subsidiary can and do 'change

hats' to represent the two corporations separately, despite their common ownership"); *Fried v.*

*LVI Servs., Inc.*, 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011) ("Notwithstanding

plaintiff's conclusory allegations to the contrary, plaintiff has plead no facts to rebut the

presumption that directors with affiliations to more than one corporation "change hats" in order

to fulfill their obligations to each entity.  In other words, when the representative directors took

the alleged actions complained of in the Amended Complaint, they were acting in their capacities

as board members of [parent], not as employees or agents of [subsidiary].").  *And see* Supp.

Madia Decl. ¶ 9 (explaining that INC. is but one of LTD.'s many subsidiaries).  Plaintiff's

assertion that McIntire and LTD. acted as agents for INC. is indeed so fanciful, and so without

basis in fact, law, or common sense, as to be sanctionable.  Plaintiff may not attempt to defeat a

federal court's jurisdiction by inventing "facts."[8]

---

[7]  McIntire has never been the CEO of INC.  Rimas Decl. ¶¶ 8-9.  Even evidence that Plaintiff
submits with her Motion demonstrates this.  *See* Paparella Aff. Ex. L (annual report filed
with Florida Secretary of State listing the officers and directors of INC., but not listing
McIntire).  (An answer filed in another case mistakenly identified McIntire as CEO of INC.
rather than LTD.)

[8]  As discussed *infra* at 23-25, Plaintiff also may not hold INC. liable for LTD.'s decision by
claiming belatedly in her Motion that LTD. and INC. are a "single employer."  That is
irrelevant, since Plaintiff was not an employee of either entity, and the Complaint alleges no
such facts in any event.

**C.**     **Even If Plaintiff Had Alleged Action By CH2M HILL, Inc., She Would
Have No Reasonable Possibility Of Stating A Claim Against That
Company, For Multiple Reasons**

Plaintiff's attempt to proceed against INC. lacks foundation not only in the facts alleged in
the Complaint, but also in the law:  The claim requires stretching the reach of the NYCHRL far
beyond what the state Court of Appeals has countenanced, as reflected in a recent decision
purposely crafted to avoid jurisdiction based on "tangential" contacts and "arbitrary" factors such
as Plaintiff invokes here.  Indeed, the "internal affairs doctrine" bars Plaintiff from deploying
New York City law to determine the composition of a board of directors of a company
incorporated in Delaware and based in Colorado.  Moreover, a corporate director is not an
"employee" covered by the NYCHRL in any event.

**1.**     **New York City's Human Rights Law Does Not Reach CH2M
HILL, Inc. Because That Company And Plaintiff Are Residents Of
Florida, Not New York City, And Plaintiff Was Not Its Employee,
Not On Its Board, And Was Not Retained To Provide It Services
In New York City; Indeed, The "Internal Affairs Doctrine" Would
Prevent New York City From Regulating The Relationship
Between A Delaware Corporation And Its Directors**

In *Hoffman v. Parade Publications*, 15 N.Y.3d 285 (2010), the New York Court of
Appeals held that the NYCHRL applies to non-residents only if they "plead and prove that the
alleged discriminatory conduct had an impact within" New York City.  15 N.Y.3d at 291-92.
Noting the numerous places where the NYCHRL emphasizes its intent to protect "*inhabitants*"
of the city, the Court of Appeals refused to extend the law to a Georgia resident who worked in
Georgia for a company headquartered in New York, even though the plaintiff occasionally
performed work in the city—attending quarterly meetings—and even though the decision to end
the plaintiff's employment was made and executed in the city.  15 N.Y.3d at 288-89.

In rejecting the broader constructions of the law adopted by some courts, the Court of
Appeals emphasized its intent to avoid an approach that "is impractical, would lead to

inconsistent and arbitrary results, and expands NYCHRL protections to **nonresidents who have, at most, tangential contacts with the city**." 15 N.Y.3d at 290-291 (emphasis added).  Rather, the discriminatory "impact" rule adopted in *Hoffman* would, the court said, "lead[ ] to predictable results" and "confine[ ] the protections of the NYCHRL to those who are meant to be protected—those who work in the city."  15 N.Y.3d at 291.  *See also Fried v. LVI Servs., Inc.*, 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011) ("[T]he impact requirement is meant to be simple to follow and predictable in its application.  This goal would be completely undermined if courts were required to conduct a fact-intensive analysis of the amount of contact a particular individual maintained with New York City even where it was undisputed that that individual did not work in New York City.") (internal citation omitted).  *And see Robles v. Cox and Co., Inc.*, 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012) ("[T]he relevant location of the injury for purposes of the impact analysis is . . . Plaintiff's place of employment.").

In this case, Plaintiff seek to predicate NYCHRL coverage on alleged contacts even more "tangential" and "arbitrary" than those rejected by the Court of Appeals in *Hoffman*.  Plaintiff is a resident of Florida who served as a director of a company incorporated in Delaware and headquartered in Colorado, and who was not hired or required to perform work for the Colorado company in New York City.  Compl. ¶¶ 3, 9; Notice of Removal ¶¶ 9-13; Madia Decl. ¶¶ 7, 9, 11, 17.  The decision that Plaintiff not be nominated for a third term as a director was made and communicated to her in Colorado.  Compl. ¶¶ 59, 82; Chin Decl. ¶ 8; Madia Decl. ¶ 15.

In *Hoffman*¸ plaintiff at least was able to "plead and prove," 15 N.Y.3d at 291-92, that the decision to end his employment was made and implemented in the city, and that he worked occasionally in the city *as an employee for that company*, including attending quarterly meetings. *Id.  See also Fried*, 2011 WL 4633985, at *13 (NYCHRL does not apply to non-resident who

worked in Connecticut but "attended meetings in," "made regular phone calls to," and "secured

contracts in" New York City).  Here, by contrast, Plaintiff "plead[s]" only in passing that she

"performed work for CH2 in New York City."  Compl. ¶ 14.  That would be insufficient under

the holding of *Hoffman* itself—plaintiff there also "performed work . . . in New York City"—

*even supposing* that Plaintiff Chin was required to "perform[ ] work" *for* INC. in New York.  But

she was not:  She was on the board of LTD., not INC., and to the extent she did any LTD. board

work in New York City, it was by choice and happenstance, not pursuant to LTD.'s direction.

(Plaintiff omits from her Complaint that she maintained an office in New York City to perform

work for *another* company, one wholly unrelated to the CH2M HILL entities.)  Plaintiff was not

employed by INC. in New York City, did not sit on the board of directors of INC., and was not

required (or expected) to perform work for INC. in the city.  Madia Decl. ¶¶ 10, 11 (Paparella

Aff. Ex. S).

    In short, New York City was not Plaintiff's "place of employment" (*Robles*, 841 F. Supp.

2d at 625) for LTD., much less for INC.  Any "impact" she experienced in New York City (she

alleges none) is even more tangential and arbitrary than in numerous cases where NYCHRL

coverage *was absent*, including the following:

- *Fried v. LVI Servs., Inc.*, 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011):
  NYCHRL did not apply to Connecticut resident who worked in Connecticut, even
  though the company was headquartered in New York City, the decision to terminate
  plaintiff was made in the city, and plaintiff alleged he attended meetings and often
  worked in the city.

- *Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 462, 465 (S.D.N.Y. 2010), which
  *Hoffman* indicated erroneously found NYCHRL coverage.  15 N.Y.3d at 290.
  Plaintiff was a California resident who worked "primarily" outside of New York City;
  the company had its "sole offices" in New York City and the allegedly discriminatory
  termination decision was "made" and "commenced" in New York City.

- *Lightfoot v. Union Carbide Corp.*, 1994 WL 184670, at *5 (S.D.N.Y. May 12, 1994):
  NYCHRL did not apply to New York City resident who was employed in

Connecticut but worked "occasionally" in New York City for a defendant with offices in the city.

- *Welch v. United Parcel Serv. Inc.*, 2012 WL 2552185, at *10-11 (E.D.N.Y. June 30, 2012):  NYCHRL did not apply to non-New York City resident where the "discriminatory" conduct was plaintiff's reassignment to facilities outside New York City; it would be "tenuous to an absurd degree" to find that the NYCHRL applied based on plaintiff's allegation that he worked two days in New York City while covering for other workers observing a religious holiday.

- *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 527 (S.D.N.Y. 2000) (cited with approval in *Hoffman*):  NYCHRL did not apply where the alleged incidents of sexual harassment occurred outside New York City and certain decisions occurred at defendant's New York City offices.

- *Duffy v. Drake Beam Morin*, 1998 WL 252063, at *12 (S.D.N.Y. May 19, 1998) (cited with approval in *Hoffman*):  NYCHRL did not apply to two employees who worked outside New York City for a company headquartered in New York City and where there was no allegation that either employee was subjected to discriminatory conduct in the city.

In sum, two years ago the New York Court of Appeals articulated a definitive interpretation of the NYCHRL that was intended to reject approaches by plaintiffs and some courts that are "impractical," "lead to inconsistent and arbitrary results," and extend the law "to nonresidents who have, at most, tangential contacts with the city."  15 N.Y.3d at 290-91.  Yet Plaintiff's claim against INC. takes the arbitrary, tangential invocation of the NYCHRL to new heights.  Plaintiff was on the board of a parent company with ten direct subsidiaries, of which INC. was only one.  Supp. Madia Decl. ¶ 9.  LTD. and its subsidiaries have more than 120 offices in the United States, Supp. Madia Decl. ¶ 7, and LTD.'s independent directors hold positions with other companies which require them to perform work across the country.  *See* CH2M HILL Companies, Ltd., Schedule 14A Definitive Proxy Statement dated March 30, 2009, at 4-6 (noting that Plaintiff is "Chief Executive Officer of Cebiz, a consulting and investment firm" and listing outside positions held by LTD.'s other independent directors) (Rimas Decl. Ex. B).  In these circumstances, it would be utterly arbitrary and impractical, and lead to countless

14

inconsistencies, if a director's "place of employment" were any city or state where LTD. or one

of its subsidiaries has an office in which that director purportedly "performed" some "work."

Indeed, in part for such reasons, the "internal affairs doctrine" would prohibit New York

City from regulating the relationship between a Delaware corporation and one of its directors as

Plaintiff attempts here.  "The internal affairs doctrine is a conflict of laws principle which

recognizes that only one State should have the authority to regulate a corporation's internal

affairs . . ., because otherwise a corporation could be faced with conflicting demands."  *Edgar v.

MITE Corp.*, 457 U.S. 624, 645 (1982).  A corporation's internal affairs, the Supreme Court has

said, concern "matters peculiar to *the relationships among or between the corporation and its

current officers, directors*, and shareholders."  *Id.* (emphasis added).  *See also* Restatement

(Second) of Conflict of Laws, § 302 cmt. a (1971) (matters which involve a corporation's

internal affairs include "the election or appointment of directors and officers").  The internal

affairs doctrine has been recognized and applied by the courts of New York—and by this Court

itself.  *See In re BP P.L.C. Deriv. Litig.*, 507 F. Supp. 2d 302, 307 (S.D.N.Y. 2007) (Baer, J.).

The selection and nomination of independent directors lies at the heart of the internal

affairs doctrine.  *See, e.g.*, *Prescott v. Plant Indus., Inc.*, 88 F.R.D. 257, 262-63 (S.D.N.Y. 1980)

(internal affairs doctrine governed claim challenging board of directors' selection of candidates

to fill vacancies on board); *Sokol v. Ventures Educ. Sys. Corp.*, 809 N.Y.S.2d 484 (N.Y. Sup. Ct.

2005) (holding that claim for improper termination of board directorship governed by law of

state of incorporation); *Rohlsen v. Latin Am. Airways*, 65 N.Y.S.2d 644, 645 (N.Y. Sup. Ct.

1946) (proper forum for adjudicating plaintiff's claims regarding "the validity of the election,

meetings and proceedings of the directors" was state of incorporation); *see also Palmer v. Arden-

Mayfair, Inc.*, 1978 WL 2506, at *9 (Del. Ct. Ch. July 6, 1978) ("[T]he method of electing

15

directors and the regulation of directors' terms in office represent internal affairs of a corporation.").

The doctrine plainly bars Plaintiff's claim here.  Plaintiff challenges a decision not to renew her service on the board of a Delaware company.  Indeed, she seeks reinstatement to LTD.'s board, Compl. at p. 13, which would cause the company to be overseen by a director the shareholders did not elect (in contravention of Delaware law and LTD.'s Bylaws), and would nullify LTD.'s shareholder elections that occurred between May 2009 and today.  Such relief "clearly goes to the heart" of a corporation's internal affairs, and must be governed by the law of the state of incorporation.  *Prescott*, 88 F.R.D. at 262.

New York courts have recognized an exception to the internal affairs doctrine when "application of the local law of some other state is required by reason of the *overriding interest of that other state* in the issue to be decided," *BP Deriv. Litig.*, 507 F. Supp. 2d at 309 (emphasis added), but New York State has no such "overriding" interest in the issues in this case.  Plaintiff has not even sued under New York state law—she sues under a city ordinance.  Choice of law rules such as the internal affairs doctrine "seek to insure that a case will be resolved under the same rules of conduct whatever the forum, and that rights of foreign sovereigns will be respected."  *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, 2007 WL 2044656, at *4 n.3 (S.D.N.Y. July 17, 2007).  But cities are not sovereigns, *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 412-13 (1978), and thus their interests are not due the respect afforded to the interests of sovereign states.  Defendants are aware of no case in which a court in New York has declined to adhere to the internal affairs doctrine in deference to a municipal ordinance.  In any event, the interest of New York City in this case—like the interest of New York State—is indiscernible, for reasons demonstrated above.

For all of these reasons, New York City law does not reach Plaintiff's claim against INC.

**2.      Outside Corporate Directors Are Not Covered By The New York City Human Rights Law**

Plaintiff does not dispute that she lacked an employment relationship with INC., Motion at 3, and it is well-settled that corporate directors are not employees and are not covered by the discrimination laws.  *See Kern v. City of Rochester*, 93 F.3d 38, 47 (2d Cir. 1996) (non-officer board members are not "employees" under the discrimination laws); *see also Fichman v. Media Ctr.*, 512 F.3d 1157, 1160-61 (9th Cir. 2008) (same); *Chavero v. Local 241*, 787 F.2d 1154, 1155 (7th Cir. 1986) (same); *Farmer v. Lowe's Co.*, 188 F. Supp. 2d 612, 619 (W.D.N.C. 2001) ("[T]he relationship between a corporation and a member of its board of directors is not an employer-employee relationship under Title VII.").  Board members are generally viewed as employers rather than employees, *Reil v. Clinton Cnty.*, 75 F. Supp. 2d 37, 39 (N.D.N.Y. 1999), because a board of directors, unlike corporate officers, reports to no one other than itself.  *See* Del. Code Ann. tit. 8, § 141(a) (West 2010) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors."); N.Y. Bus. Corp. Law § 701 ("[T]he business of a corporation shall be managed under the direction of its board of directors.").  In the case of INC., Plaintiff's case is doubly flawed because she was not even a director of that company, much less an employee.

Defendants' Notice of Removal cited *McGhee v. City of N.Y.*, 2002 WL 1969260, at *3 (N.Y. Sup. Ct. Aug. 5, 2002), for the proposition that the NYCHRL is "limited in applicability to the employment relationship."  (The NYCHRL also covers public accommodations and housing, neither of which is relevant here.)  Plaintiff tacitly concedes that this was the ruling in *McGhee*, and attempts to distinguish it on the grounds that *McGhee* was decided before passage of the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85, § 1 (2005), which

provided that the NYCHRL was to be construed more "liberally" than federal or New York State civil rights laws.  Motion at 14.

Plaintiff's argument fails, *first*, because it is clear from the face of the NYCHRL that its provisions concern the employment relationship.  Plaintiff's own first cause of action alleges that "Defendants are an 'employer or an employee or agent thereof' under the New York City Human Rights Law, § 8-102(5) and § 8-107(1)(a)."  Compl. ¶ 92.  Section 8-107(1) is titled "Employment" and prohibits unlawful discriminatory practices in connection with "refus[ing] to *hire* or *employ* or to bar or to discharge from *employment*" or to discriminate in "terms, conditions or privileges of *employment*."  N.Y.C. ADMIN. CODE § 8-107(1)(a) (emphases added).

*Second*, the statement in the 2005 Local Civil Rights Restoration Act that the NYCHRL is to be construed more "liberally" than federal or state law did not make the NYCHRL boundless.  Nor, specifically, did it purport to convert outside directors to employees, or amend the language which establishes that the NYCHRL is concerned with the employment relationship.  The 2005 Act therefore does not overrule the pre-2005 case law holding that (outside of housing and public accommodations) the NYCHRL only applies in the employment context.  *See, e.g.*, *McGhee*, 2002 WL 1969260, at *3; *O'Neill v. Atl. Sec. Guards*, 250 A.D.2d 493, 493, 671 N.Y.S.2d 976, 976 (N.Y. App. Div. 1st Dep't 1998) (affirming dismissal of an age discrimination claim under the NYCHRL where evidence showed that the plaintiff was an independent contractor, and not an employee); *Lavergne v. Burden*, 244 A.D.2d 203, 203, 665 N.Y.S.2d 272, 272-73 (N.Y. App. Div. 1st Dep't 1997) (affirming dismissal of claims brought under the NYCHRL for employment discrimination based on sex and retaliatory discharge because plaintiff's allegations showed that she was not an employee).  Indeed, cases decided after 2005 continue to hold that the NYCHRL only applies to the employment relationship.  *See,*

*e.g.*, *Cosgriff v. Valdese Weavers LLC*, 2012 WL 1071497, at *4 & n.2 (S.D.N.Y. Mar. 30, 2012) ("The protections afforded by the NYCHRL extend to employees only."); *Kilkenny v. Greenberg Traurig, LLP*, 2006 WL 1096830, at *4 (S.D.N.Y. Apr. 21, 2006) ("An employer-employee relationship is required to sustain a claim under [the NYCHRL].").

Unable to overcome the plain language of the statute or to cite *a single case* holding that the pertinent provisions of the NYCHRL apply outside the employment context or to independent directors, Plaintiff misrepresents the statutory text and argues that "'natural persons' such as [Plaintiff] who 'carry out work in furtherance of an employer's business enterprise' fall within the protections of the NYCHRL."  Motion at 2 (citing N.Y.C. ADMIN. CODE § 8-102(5)). The full text of that subdivision is as follows:

> For purposes of subdivisions one, two, and three of section 8-107 and section 8-107.1 of this chapter, the term "employer" does not include any employer with fewer than four persons in his or her employ.  *For purposes of this subdivision*, natural persons *employed as independent contractors* to carry out work in furtherance of an employer's business enterprise who are not themselves employers *shall be counted as persons in the employ of such employer*.

N.Y.C. ADMIN. CODE § 8-102(5) (emphases added).[9]  This subdivision is irrelevant to Plaintiff's case—it is merely a "counting" provision that identifies who will be counted as an employee for purposes of "this subdivision," that is, for determining whether a company has the four employees required for coverage by the NYCHRL.  To the extent the subdivision has any bearing on this case, it *undermines* Plaintiff's claim to coverage, since among the non-employees who "carry out work in furtherance of an employer's business enterprise," only independent contractors are counted toward statutory coverage, *not* corporate directors such as Plaintiff. (Plaintiff does not and cannot allege that she was an independent contractor to any company,

---

[9]  Subdivisions one, two, and three of Section 8-107 prohibit employment discrimination; Section 8-107.1 prohibits, among other things, employment discrimination against victims of domestic violence.

much less to INC.).[10]  The provision is thus more evidence that New York City, like New York

State and the federal government, does not consider corporate directors to be employees.

Finally, Plaintiff appears to argue that the anti-retaliation provision of the NYCHRL

gives a right of action to "any person" who protests discrimination, even if that person has no

employment relationship with the defendant.  *See* Motion at 15-16 (citing N.Y.C. ADMIN. CODE

§ 8-107(7)).  That interpretation would open whole new vistas of litigation—in precisely the

manner *Hoffman* sought to prevent—as individuals or businesses who have no employment

relationship with a company could claim they objected to the company's employment practices

and the company "retaliated" by, for example, "defaming" them in the community or declining

to purchase their products or services.  That is an absurd reading of the NYCHRL that has no

apparent analogue in any other employment discrimination law and ignores the NYCHRL's plain

language, which implicates retaliation in response to complaints *by employees*.  *See* N.Y.C.

ADMIN. CODE § 8-107(7) ("The retaliation or discrimination complained of under this

subdivision need not result in an ultimate action with respect to *employment* . . . or in a

materially adverse change in the terms and conditions of *employment*.") (emphases added).  This

language was adopted in a 2005 amendment to the NYCHRL that incorporated the retaliation

standard used by the U.S. Equal Employment Opportunity Commission.  *See Williams v. New

York City Hous. Auth.*, 61 A.D.3d 62, 70, 872 N.Y.S.2d 27, 33-34 (N.Y. App. Div. 1st Dep't

2009) (citing Committee Report).  The EEOC standard, which subsequently was adopted by the

U.S. Supreme Court, enables employees to base retaliation claims on slighter injuries than

needed to bring a discrimination claim—but the retaliation must still occur in the context of an

---

[10]  *Jowers v. DME Interactive Holdings, Inc.*, 2003 WL 230739, at *3 (S.D.N.Y. Feb. 3, 2003),
cited by Plaintiff (Motion at 3), is thus inapposite, because the plaintiff in *Jowers* was an
independent contractor.  Moreover, the plaintiff in *Jowers* alleged that she was denied an
*employment* contract on the basis of her race.

employment relationship.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 65-66 (2006) (citing EEOC standard with approval and holding that retaliation provision of Title VII requires that "the *employer's* actions must be harmful to the point that they could well dissuade a reasonable *worker* from making or supporting a charge of discrimination") (emphases added). Courts applying the NYCHRL retaliation provision since the 2005 amendment have, accordingly, continued to limit its application to the employment context.  *See, e.g.*, *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (noting that the "functional difference, if any" between the NYCHRL retaliation standard and the standard used for federal and state retaliation claims appears to only be one of materiality); *Williams v. City of N.Y.*, 2012 WL 2524726, at *4 (S.D.N.Y. June 26, 2012) ("Courts should assess retaliation claims under the NYCHRL by determining whether a retaliatory act would have a "chilling effect" on *an employee's* decision to engage in protected activities.") (emphasis added).

For all of these reasons, Plaintiff's lack of an employment relationship with INC. is fatal to any "possible" discrimination or retaliation claims against INC.

\*        \*        \*

For the multiple, independent reasons discussed in Sections I.B and I.C above, there is no possibility, based on the pleadings, that Plaintiff can state a cause of action against INC. Plaintiff's motion to remand should therefore be denied.

## II.  PLAINTIFF'S OTHER LATE-FOUND THEORIES AND FACTUAL ALLEGATIONS ALSO FAIL TO ESTABLISH A CAUSE OF ACTION AGAINST CH2M HILL, INC.

In evident recognition of the serious deficiency of her Complaint, Plaintiff advances in her Motion a litany of other new-found allegations and theories of liability.  Even if this Court were to consider these late-found allegations and theories—which, for reasons explained above,

21

it should not—they still would be insufficient to establish a reasonable possibility that Plaintiff

has a viable claim against INC.

*First*, INC. is not liable for "interfering" with Plaintiff's attempt "to aid and encourage

Finn in the exercise and enjoyment of rights Finn was granted under Section 8-107 of the

NYCHRL." *See* Motion at 17.  Plaintiff argues that this allegation appears in the Complaint, but

does not cite the paragraph where it supposedly appears.  Nor can she, for the Complaint

contains *no* factual allegations specific to INC., and no allegation of anyone "interfering" with aid

she supposedly tried to give Finn.  (Implementing a decision that already was made and

communicated, *see* Compl. ¶ 34, is not illegal "interference" under the NYCHRL.)  *See also*

*Artis v. Random House, Inc.*, 936 N.Y.S.2d 479, 487 (N.Y. Sup. Ct. 2011) (dismissing claim

under Section 8-107(19) because plaintiff did not allege that any of defendant's supervisors or

employees threatened or intimidated her, or took any action besides requesting her transfer).

Plaintiff also fails to specify the factual basis for her assertion that INC.—a corporate entity—

somehow "interfered."

*Second*, INC. cannot be held liable for aiding and abetting under the NYCHRL, which

requires "a showing that the defendant actually participated in the conduct giving rise to the

claim of discrimination." *Brice v. Sec. Operations Sys., Inc.*, 2001 WL 185136, at *4 (S.D.N.Y.

Feb. 26, 2001).  Plaintiff does not and cannot allege that INC. participated in any allegedly

discriminatory or retaliatory conduct.  In *Fried v. LVI Services, Inc.*, 2011 WL 2119748

(S.D.N.Y. May 23, 2011), the court found that plaintiff failed to allege a claim against a

subsidiary for aiding and abetting under the NYCHRL because the complaint contained "no

well-pled allegations" that the subsidiary "directly participated in any of the purported

discriminatory actions against the plaintiff."  *Id*. at *8.  The court noted that plaintiff could not

establish this element "merely by alleging" that the subsidiary was a minority shareholder in the parent and had appointed two members of its board of directors. *Id.* Because the directors appointed by the subsidiary were in the minority, they were "incapable, by definition, of controlling the actions" of the parent. *Id.* at *6. The facts alleged in Plaintiff's Complaint here are even more sparse and non-specific and give no basis to infer that the subsidiary (INC.) took the extraordinary step of determining its parent's directors. Rather, INC.'s supposed separate and independent participation is merely a fiction fabricated for Plaintiff's Motion to defeat this Court's jurisdiction. The Complaint presents no reasonable possibility of a viable aiding and abetting claim.

*Third*, INC. cannot be held vicariously liable for the alleged discriminatory and retaliatory conduct of McIntire. *See* Motion at 18. McIntire has never been the CEO of INC., he was not a director of INC. at the time of the relevant conduct, he did not exercise "managerial or supervisory authority" on behalf of INC., and he was not acting as an agent of INC. when determining LTD.'s board. *See* Rimas Decl. ¶¶ 8-9. *See supra* at 9-10 & n.7.

*Fourth*, Plaintiff leans heavily on the argument that INC. may be liable because INC. and LTD. were her "single employer." Once again, Plaintiff improperly relies on a theory of liability and a plethora of factual assertions not presented in the Complaint, including allegations regarding Defendants' "Human Resources department" (Motion at 19), "ethics hotline" (Motion at 22), "stock purchase plan," "bonuses," and "health insurance" (Motion at 23), and the purported role of various officers (Motion at 24). Apart from this fatal flaw, Plaintiff's single employer argument founders most obviously on her own tacit admission that outside directors are not employees. *See* cases cited *supra* at 17. "The 'single employer' doctrine 'enables a *wronged employee* to impose liability on an entity [that is] not his employer of record,'" Plaintiff

argues, Motion at 18 (citation omitted)—but she was not an employee, "wronged" or otherwise, and her attempt to use the single employer doctrine ends there.  Having concocted numerous strained theories of liability to account for the fact that she was not an employee, Plaintiff cannot then hold defendants who are not employers liable through a body of law specific to the employment relationship.  *See Murray v. Miner*, 876 F. Supp. 512, 515 (S.D.N.Y. 1995), *aff'd* 74 F.3d 402 (2d Cir. 1996) (cited in Motion at 18, 19) (single employer doctrine applies to claims that "fundamentally implicate employer-employee relationships").  For a non-employee to hold one corporation liable for the act of another, she must pierce the corporate veil.  The Complaint here alleges no facts to satisfy that high standard, and her Motion does not attempt to do so.

In any event, the "single employer" doctrine determines when a *parent* company may be considered the employer of a *subsidiary's* employees.  *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995) (cited in Motion at 19).  In her Motion, Plaintiff argues that the subsidiary (INC.) should be considered the employer of the independent directors of its parent (LTD.).  Defendants are not aware of any Second Circuit case in which the "single employer" doctrine has been applied in this manner.  Moreover, the Second Circuit has recognized that the "single employer" doctrine is only to be applied in "extraordinary circumstances," which do not exist here.  *Herman v. Blockbuster Entm't Grp.*, 18 F. Supp. 2d 304, 308 (S.D.N.Y. 1998) (cited in Motion at 22), *aff'd* 182 F.3d 899 (2d Cir. 1999).

Finally, even if the "single employer" doctrine applied—it does not—INC. was not responsible for making the "final decisions regarding employment matters" related to Plaintiff.  *Cook*, 69 F.3d at 1240 ("[T]he critical question to be answered then is:  What entity made the final decisions regarding employment matters related to the person claiming discrimination?").  The "final" decision regarding whether Plaintiff would be nominated to serve another term as an

independent director of LTD. was by majority vote of the board of directors of LTD.  *See* Restated

Bylaws art. 3, § 8 ("An affirmative vote of not less than a majority of the entire Board of

Directors is required for the Board to act on behalf of the Corporation.") (Rimas Decl. Ex. A).

Plaintiff fails to articulate how INC. could have controlled LTD. when, among other things, INC.

was merely one of ten major subsidiaries of LTD.  Supp. Madia Decl. ¶ 9.  There is simply no

evidence that INC. had the ability to control the decisions of the board of LTD.  *See Herman*, 18

F. Supp. 2d at 312 (finding that parent and subsidiary were not a "single employer" because

plaintiffs offered no evidence that the parent "played any role in the employment decisions and

alleged discriminatory conduct particularly affecting them").

*      *      *

Ultimately, Plaintiff's many strained theories for including INC. in this case merely

confirm that INC. has been improperly joined and the case should proceed in federal court based

on diversity jurisdiction.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For the foregoing reasons, this Court should deny Plaintiff's motion to remand.


Dated:   July 20, 2012                          GIBSON, DUNN & CRUTCHER LLP

                                                By:   /s/ Gabrielle Levin
                                                      Eugene Scalia (*Admitted Pro Hac Vice*)
                                                      Gabrielle Levin

                                                      200 Park Avenue
                                                      New York, NY  10166-0193
                                                      Telephone:  212.351.4000
                                                      Facsimile:  212.351.4035

                                                      *Attorneys for Defendants CH2M HILL
                                                      Companies, Ltd., CH2M HILL, Inc., and
                                                      Lee McIntire*

25