```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CAROLYN CHIN,                                  :
                                               :
                Plaintiff,                     :
                                               :          OPINION & ORDER
        -against-                              :
                                               :          12 Civ. 4010 (HB)
CH2M HILL COMPANIES, LTD., CH2M                :
HILL, INC., and LEE McINTIRE,                  :
                                               :
                Defendants.                    :
------------------------------------------------------------X
```

**Hon. HAROLD BAER, JR., District Judge:**

      Carolyn Chin ("Plaintiff") brought this discrimination and retaliation action in New York state court pursuant to the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq., and against defendants CH2M Hill Companies, Ltd. ("LTD"), CH2M Hill, Inc. ("INC"), and Lee McIntire (collectively, "Defendants"). Defendants removed the case to federal court based on diversity jurisdiction. Defendants argue that INC, whose presence in this suit destroys complete diversity, is fraudulently joined as a defendant. Plaintiff now moves to remand the case back to state court arguing that INC is properly named in this suit. For the following reasons, Plaintiff's motion to remand is GRANTED.

## Background

      Plaintiff served as an independent director on LTD's board of directors from 2003 until 2009, when her term concluded and she was not nominated for re-election. Compl. ¶ 2. On February 14, 2012, Plaintiff filed a complaint in New York Supreme Court. *Id*. ¶ 1. Plaintiff alleges that she was not re-nominated to LTD's board of directors because Defendants discriminated against her on the basis of her sex, race, and disability and because Plaintiff had complained of gender discrimination in connection with a female employee whose employment had been terminated. Compl. ¶ 7. Plaintiff discussed that termination with defendant McIntire, and she believes it was as a result of that conversation and her support for the employee that she was not re-nominated to the board.

      Defendants removed the case on May 21, 2012. It is undisputed that both Plaintiff and INC are citizens of Florida for jurisdictional purposes and that this destroys complete diversity if

1

INC is indeed properly named in this suit.[1] Defendants argue "that although Plaintiff and INC are citizens of the same state[,] . . . complete diversity is present because INC was fraudulently joined and therefore should not be considered for purposes of determining diversity jurisdiction." Def.'s Opp'n 3. Plaintiff moved to remand on June 26, 2012, arguing that INC was not fraudulently joined, and thus the Court lacks subject-matter jurisdiction. Pl.'s Supp. 11.

**Discussion**

The moving party claiming fraudulent joinder in the Second Circuit "bears a heavy burden." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). Defendants

> must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.

*Id*. In addition to this heavy burden of proof born by Defendants, all factual and legal ambiguities are on such a motion resolved in favor of Plaintiff. *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004).

There is no indication here that Plaintiff intended to defeat diversity jurisdiction by naming INC. Instead, the Defendants raise two principal arguments for why there is no possibility that Plaintiff can state a cause of action against INC in state court: (1) No action by INC is alleged in the complaint (and only LTD could have taken action against her as a director); and (2) the New York City Human Rights Law ("NYCHRL") does not reach INC because INC has no connection to New York City and New York City cannot regulate the internal affairs of a foreign corporation, and outside directors are not covered by the NYCHRL.

**I.   INC**

The parties dispute which defendant is the subject of each of Plaintiff's specific allegations of discrimination and retaliation. Plaintiff unfortunately lumps INC and LTD together and treats them as one: "The Headquarters of CH2M Hill Companies, Ltd. and CH2M HILL INC [sic] (collectively referred to as 'CH2') is in Denver, Colorado." Compl. ¶ 3. This mistake, however, is understandable given that representations made to the outside world by the CH2M companies treats the CH2M entities as one. *See* Pl.'s Supp. 4–5 (citing declarations and noting

---

[1] LTD is incorporated in Delaware and headquartered in Colorado, and McIntire is the CEO of LTD and lives and works in Colorado. The parties disagree on the nature of McIntire's relationship to INC.

that LTD and INC and other subsidiaries are referred to by the CH2M entities as an "enterprise" or a "global organization", "share the same legal team and the same human resources", fail to distinguish between the entities on officers' letterheads, and refer to McIntire as having "the operations and leadership responsibility for the CH2M HILL enterprise"). But because certain actions may have been taken only by LTD, such as nominating Plaintiff to serve on LTD's board, the complaint makes sense only if certain of the collective references to "CH2" are understood to be an action solely by LTD or INC. Plaintiff points the Court to several actions by INC that she says are supported by the allegations in the complaint—such as the source of payments for Plaintiff's service on the board—references which Defendants argue are either demonstrably erroneous or impossible.

      I decline the parties' invitation to sort out said discrepancies. The issue as I see it is simply whether Plaintiff has defeated Defendants' "right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia*, 138 F.3d at 460–61 (2d Cir. 1998) (citations omitted).

      To start with, INC is not merely a nominal party. INC's principal place of business and mailing address are in Colorado, the same as LTD. Paparella Decl. Ex. L. There are members of the LTD board of directors who are employees or directors of INC. Chin Decl. ¶ 11; Rimas Decl. ¶ 7. There is overlap in the legal counsel, Chin Decl. ¶ 12, and perhaps in the human resources department, Pl.'s Supp. 5. Most importantly, one of the underlying bases for this action is the complaint of discriminatory treatment of a high-level employee of INC and the resultant response by Defendants. It is no coincidence that Plaintiff named INC as a defendant, "one of approximately ten wholly owned, direct subsidiaries of [LTD]", Madia Decl. ¶ 9. It is a coincidence, albeit a fortuitous one for Plaintiff, that INC happens to be a citizen of Florida, but this hardly supports the Defendants' contention that they are a victim of an attempt by Plaintiff to name as a defendant a citizen without a real connection to this case. As will be discussed below, it is too narrow a view, on this motion at least, to construe Plaintiff's case as one only for a failure to nominate her to the board of LTD. Plaintiff alleges that Defendants, including INC, acted against her based on a discriminatory and retaliatory animus. Simply because INC lacks the power to nominate her to the board or to pay her fee as a director does not mean that INC—and its agents who also work for LTD—had no role in or effect on that process.

**II.     The New York City Human Rights Law**

Defendants urge the Court to adopt the more forgiving standard of *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001). The court there interpreted the "no possibility" standard of *Pampillonia* to mean "no reasonable basis". *Id.* at 280. To maintain the heightened burden for fraudulent joinder and to keep some meaningful distance between this motion and a motion to dismiss, I join with the majority of district courts and follow the Second Circuit's instruction that Defendants must show "no possibility, based on the pleadings, that [Plaintiff] can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461; *see also MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 393 n.7 (S.D.N.Y. 2009) (discussing the *In re Rezulin* interpretation of *Pampillonia* and citing cases explicitly rejecting a lower burden); *In re Fosamax Products Liab. Litig.*, MDL 1789, 2009 WL 3109832, at *2 n.1 (S.D.N.Y. Sept. 28, 2009) ("There is no reason to believe that the Court of Appeals inadvertently used the language it did when it articulated the fraudulent joinder standard." (internal quotation marks omitted)). In any event, the concerns of the *In re Rezulin* court are not present here, that a "plaintiff could join any defendant without setting forth any basis in fact or law for liability." *In re Rezulin*, 133 F. Supp. 2d at 284.

With the *Pampillonia* standard in mind, I turn to the question of whether Defendants have shown that there "is no possibility that the claims against [INC] could be asserted in state court", *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (citing *Pampillonia*, 138 F.3d at 461), and the three arguments noted above.

   *a. Impact in New York City*

Defendants argue that Plaintiff cannot state a cause of action against INC because the connection in this case to New York City is too attenuated. In *Hoffman v. Parade Publications*, 933 N.E.2d 744 (N.Y. 2010), the New York Court of Appeals held that a non-resident who invokes the NYCHRL must "plead and prove that the alleged discriminatory conduct had an impact in New York." *Hoffman*, 933 N.E.2d at 747. The plaintiff in *Hoffman* was a resident of Georgia who worked in Atlanta and attended occasional meetings in New York City. *Id.* at 745. Even though the decision to terminate the plaintiff's employment was also made in New York City, the court found that the plaintiff did not demonstrate a sufficient impact to invoke the protections of the NYCHRL. *Id.* at 745–48. Defendants cite *Hoffman* and subsequent cases

where the *Hoffman* standard was not met. *See* Defs.' Opp'n 11–15. Defendants argue that Plaintiff's allegations here have an even weaker connection to New York City than those cases.

  Here, however, the facts are a little different. Most importantly, Defendants have offices and conduct business in New York, Plaintiff performed work in New York on behalf of LTD (such as attending events and securing financing), and the fired employee worked in New York when Plaintiff advocated on her behalf and investigated her firing. Compl. ¶¶ 4, 6, 14, 31–45, 77–81. *Hoffman* requires that Plaintiff "plead and prove that the alleged discriminatory conduct had an impact in New York." 933 N.E.2d at 747. *Pampillonia*, in contrast, requires only that Plaintiff be able to "state a cause of action against the non-diverse defendant in state court." 138 F.3d at 461. Regardless of whether Plaintiff performed work in New York City of her own volition and not at the direction of LTD—and regardless of whether Defendants meet their burden on a motion to dismiss (let alone whether Plaintiff could ultimately prove an impact in New York)—Defendants on this record have failed to show that there is no possibility that there was an impact in New York.

  The cases cited by Defendants that applied *Hoffman* all turn on significantly more forgiving standards (for defendants) than improper joinder under *Pampillonia*.[2] And the cases that I can find where there was no possibility that the plaintiff could state a cause of action turned on standards that were much more precise than the vagaries of *Hoffman*.[3] Even in the more

---

[2] *See, e.g.*, *Welch v. United Parcel Services, Inc.*, 2012 WL 2552185, at *32 (E.D.N.Y. 2012) (granting defendant's motion for judgment as a matter of law as to the NYCHRL claims); *Fried v. LVI Services, Inc.*, 2011 WL 4633985, at *13 (S.D.N.Y. 2011) (granting defendant's motion for summary judgment on the NYCHRL claim); *Wahlstrom v. Metro-North Commuter R. Co.*, 89 F. Supp. 2d 506, 528 (S.D.N.Y. 2000) (same).

[3] *See, e.g.*, *Aramini v. City of Buffalo*, No. 11-CV-745S, 2012 WL 1898839, at *2 (W.D.N.Y. May 23, 2012) (plaintiff was precluded from a bringing an action against the city after already receiving workers' compensation benefits); *City of Syracuse v. Loomis Armored US LLC*, No. 5:11-cv-00744 (MAD/GHL), 2011 WL 6318370, at *6–7 (N.D.N.Y. Dec. 15, 2011) (plaintiff's breach of contract and negligence claims were time-barred); *Tucker v. Kaleida Health*, No. 09-CV-719S, 2011 WL 1260117, at *3–4 (W.D.N.Y. Mar. 31, 2011) (plaintiff could not state a breach of warranty or strict products liability claim against a hospital, which, under New York law, is a service provider and not a product seller); *In re Zyprexa Products Litigation*, Nos. 04-MD-01596 (JBW), 08-CV-3249 (JBW), 2009 WL 1044508, at *6–8 (E.D.N.Y. Apr. 15, 2009) (plaintiff's medical malpractice claim was procedurally defective because plaintiff failed to consult with a qualified expert); *Sanchez v. University of Pennsylvania Museum of Archaeology and Anthropology*, No. 04 Civ. 1253(JSR), 2004 WL 1621184, at *1 (S.D.N.Y. July 20, 2004) (plaintiff's conversion claim was time-barred); *Negrin v. Alza Corp.*, No. 98 CIV. 4772 DAB, 1999 WL 144507, at *5 (S.D.N.Y. Mar. 17, 1999) (plaintiff could not state a claim against a pharmacy on theories of negligence, breach of warranty, or strict liability where there were no allegations that the pharmacy did anything other than correctly fill a prescription and dispense the product as packaged by the manufacturer).

difficult cases, the showing by defendants was clear and convincing to a degree not matched by Defendants here. *Hoffman* constructs a balancing test that aims to "confine[] the protections of the NYCHRL to those who are meant to be protected—those who work in the city." 933 N.E.2d at 747. Plaintiff worked and the impact of Defendants alleged conduct may have been felt in New York. That is enough.

> *b. Internal Affairs Doctrine*

Defendants argue that this case must be governed by the law of the state of incorporation and that New York City cannot regulate the internal affairs of a foreign corporation. "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *see also Atherton v. FDIC*, 519 U.S. 213, 224 (1997) ("The internal affairs [doctrine] . . . seeks only to avoid conflict by requiring that there be a single point of legal reference."). In New York, the simple fact that officers and directors are involved is insufficient to make an automatic reference to the state of incorporation's laws. *See Tyco Int'l, Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 560 (S.D.N.Y. 2010) (noting that New York takes a narrower view of the internal affairs doctrine). Instead, "the internal affairs doctrine is applied only as one factor in an analysis where the law of the state with the greatest interest in the issue governs." *Id.* (internal quotation marks omitted).

The cases cited by Defendants deal squarely with issues that "closely affect the organic structure or internal administration of the corporation." Restatement (Second) of Conflict of Laws § 309 cmt. c (1971); *see, e.g.*, *In re BP P.L.C. Deriv. Litig.*, 507 F. Supp. 2d 302 (S.D.N.Y. 2007) (applying English corporate law to claims of breach of fiduciary duty to shareholders, waste of corporate assets, and commodities trading activities); *Prescott v. Plant Indus., Inc.*, 88 F.R.D. 257 (S.D.N.Y. 1980) (applying the internal affairs doctrine where seven individuals received equal votes for three open positions on the board of directors). While undoubtedly set in the context of a board election, our case is less about the validity of the election, or even the nomination of board members, than it is the "existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on race, color, . . . gender, [or] disability . . . ." N.Y.C. Admin. Code § 8-101. One part of

6

the relief Plaintiff seeks does directly implicate the internal administration of the corporation; reinstatement to the board. *See* Compl. Prayer for Relief. The case at bar, however, is concerned with matters that are far broader than the organic structure or internal administration of LTD. Reinstatement to the board may (or may not) be available to Plaintiff, but that does not render impossible the prospect of collecting damages. The aims of the internal affairs doctrine—to save a corporation from conflicting demands—are not necessarily frustrated by the potential requirements of the NYCHRL. This raises the questions of whether there is even a conflict to begin with and whether, if compliance with the NYCHRL is in tension with the demands of Delaware corporate law, this is sufficient (in consideration with other factors) to find that Delaware has a greater interest.

The interest expressed by New York City is, in no uncertain terms, significant. *See* N.Y.C. Admin. Code § 8-101 ("[T]here is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences . . . . [P]rejudice, intolerance, bigotry, and discrimination . . . threaten the rights and proper privileges of its inhabitants and menace the institutions and foundation of a free democratic state."). Defendants argue that because municipalities are not sovereigns, the interests expressed by them are irrelevant to any choice-of-law analysis. Defs.' Opp'n 16 (citing *In re BP P.L.C. Deriv. Litig.*, 507 F. Supp. 2d at 309; *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 CIV. 3494 (DLC), 2007 WL 2044656, at *4 n.3 (S.D.N.Y. July 17, 2007)). Defendants also allude back to the *Hoffman* problem and characterize New York City's interest as "indiscernible". *Id.* There may not be cases on this rather unique problem, but the fact that cases not faced with this issue used words like "state" or "sovereign" does not negate New York City's interest. *See* Restatement (Second) of Conflict of Laws § 3 (1971) ("As used in the Restatement of this Subject, the word 'state' denotes a territorial unit with a distinct general body of law."); *see also id.* § 3 cmt. b ("[L]ocal subdivisions of a state may be allowed by the state to make certain laws applicable within their own boundaries. All such laws are part of the law of the state.").

  c. *Discrimination or Retaliation Against Outside Directors*

At its core, this case turns on whether the NYCHRL is broad enough to allow for any possibility that Plaintiff, as an outside director, could assert a claim for discrimination or retaliation against the corporation. This motion, of course, requires that possibility to extend as

well to INC, a subsidiary of LTD, but which, as discussed above, is intimately bound up with the facts of this case. Defendants note that discrimination laws typically are directed towards employees, not non-officer board members. *See, e.g.*, *O'Neill v. Atl. Sec. Guards*, 671 N.Y.S.2d 976, 976 (App. Div. 1st Dep't 1998) (affirming dismissal of an age discrimination claim under the NYCHRL where evidence showed that the plaintiff was an independent contractor and not an employee); *Lavergne v. Burden*, 665 N.Y.S.2d 272 (App. Div. 1st Dep't 1997) (affirming dismissal of claims brought under the NYCHRL for employment discrimination based on sex and retaliatory discharge because plaintiff's allegations showed that she was not an employee); *McGhee v. City of New York*, No. 113614/01, 2002 WL 1969260, at *3 (N.Y. Sup. Ct. Aug. 5, 2002) (holding that non-employees "lack standing to sue under the federal, state and city statutes that prohibit discrimination in employment"). The fact is that neither the parties nor the Court are able to find a case applying the NYCHRL in a context resembling this one—or refusing to do so.

That a cause of action for discrimination and retaliation by a director against a board under the NYCHRL may be one of first impression does not mean it is impossible or frivolous. The standard on this motion "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano v. Allstate Indem.*, 211 F.3d 1278 (10th Cir. 2000) (unpublished opinion). All that is required here is that Plaintiff "can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461; *see also Montano*, 211 F.3d at 1278 ("[R]emand is required if any one of the claims against the non-diverse defendant . . . is possibly viable."); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 207 (5th Cir. 1983) ("Even if [plaintiff] were [precluded] from pursuing all his claims save one in state court, a remand would be necessary.").

The NYCHRL provides for the possibility that Plaintiff can state a cause of action against INC. The law "explicitly requires an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language. The independent analysis must be targeted to understanding and fulfilling what the statute characterizes as the [NYCHRL]'s 'uniquely broad and remedial' purposes, which go beyond those of counterpart state or federal civil rights laws." *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (App. Div. 1st Dep't 2009); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) ("The Local Civil Rights Restoration Act of 2005 . . . amended

the [NYCHRL] in a variety of ways, including by confirming the legislative intent to abolish 'parallelism' between the [NYCHRL] and federal and state anti-discrimination law[.]"). The language of at least one section of the NYCHRL is sufficiently broad to allow for Plaintiff to state a cause of action against INC:

> 7. Retaliation. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . . . The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

N.Y.C. Admin. Code § 8-107(7).[4] Section 8-107 is captioned "Unlawful discriminatory practices." Subsection 8-107(1) is aimed specifically at employment, whereas § 8-107(7) is concerned with retaliation, qualified only by the requirement that the person who retaliates or discriminates be "engaged in any activity to which this chapter applies", that is, employment, housing, or public accommodation. Part of the purpose of the NYCHRL is "to eliminate and prevent discrimination from playing any role in actions relating to employment . . . ." *Id.* § 8-101. I am not prepared to say that simply because a person is on the employer side of the employment divide, they are incapable of being deterred by a retaliatory act from protecting an employee from discrimination.[5] Defendants were engaged in employment activities, and Plaintiff opposed what she alleges was discriminatory treatment within INC and LTD. The adverse action that she says was taken against her was an effort by Defendants to block her from re-nomination to the board, and keep in mind the NYCHRL does not require that she be terminated from employment. Further, it is not necessary for me to determine the strength of Plaintiff's

---

[4] Section 8-107(6) also prohibits aiding and abetting: "It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." This section suggests that an actual violation of § 8-107(7) need not be made by INC directly, so long as INC was aiding or abetting the other defendants in doing so.

[5] The parties vigorously dispute the issue of whether or not an outside director can be considered to be "employed" by the corporation for the purposes of the NYCHRL. Because I find that the retaliation section provides for the possibility that Plaintiff could state a cause of action against INC, irrespective of the nature of the employment relationship, I express no opinion about the scope of the employment provisions of the NYCHRL.

interpretation. My reading of § 8-107(7) for the purposes of this motion says nothing as to whether or not Plaintiff's cause of action will ultimately survive; that discussion will come somewhere down the road.

Defendants argue that the statute cannot support this interpretation. Defs.' Opp'n 20–21 ("That is an absurd reading of the NYCHRL that has no apparent analogue in any other employment discrimination law and ignores the NYCHRL's plain language, which implicates retaliation in response to complaints *by employees*."). The language of § 8-107(7) that states that the retaliation complained of need not result in an action with respect to *employment* or adversely change the conditions of *employment* suggests that § 8-107(7) contemplates only a plaintiff who is an *employee*. This point alone, however, is not enough for me to opine that it is beyond peradventure for a director to state a cause of action for retaliation under the NYCHRL. Defendants invite me to explore the history of the NYCHRL amendments, which incorporated standards used by the federal Equal Employment Opportunity Commission. Defendants further cite two recent cases from the district and appellate courts. In *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010), the Second Circuit considered how a more liberal reading of the NYCHRL might affect the materiality standard for retaliation claims. That case dealt squarely with an employment relationship, and while the opinion could be read to assume that retaliation can occur only in such a context, the plaintiff abandoned any NYCHRL claims and the Second Circuit made no comment beyond that of materiality. *See id.* at 723. Similarly, in *Williams v. City of New York*, 11 Civ. 3456 JSR, 2012 WL 2524726 (S.D.N.Y. June 26, 2012), and the New York Appellate Division case it relies on, *see Williams*, 872 N.Y.S.2d 27, the courts dealt with traditional employment relationships and had no reason to discuss whether the expansive nature of the NYCHRL allowed for a liberal reading of context as well as materiality. These cases do not and should not foreclose the possibility that the NYCHRL could reach retaliatory acts by a corporation against one of its non-officer directors. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992) ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.").

## Conclusion

It is possible that Plaintiff can state a claim against INC. The Court therefore lacks jurisdiction, and the motion to remand is GRANTED. The Clerk of Court is instructed to close the open motions and effectuate remand to the Supreme Court of the State of New York, County of New York.

SO ORDERED.

Date: 9/28/12
New York, New York

HAROLD BAER, JR.
**United States District Judge**

11